Calvin **WILLIAMS**, Petitioner-Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 1131, Docket 74–1463.

United States Court of Appeals,
Second Circuit.

Argued June 20, 1974.

Decided Sept. 25, 1974.

Irving Anolik, New York City, for petitioner-appellant.

WALTER J. HIGGINS, Jr., Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S.D.N.Y., John D. Gordan III, Asst. U. S. Atty., of counsel), for appellee.

Before SMITH and MANSFIELD, Circuit Judges, and BARTELS,* District Judge.

PER CURIAM:

On August 3, 1971, Williams and four others, Richard English, Lolita Kowlessar, Connie McNeil and Robert Roseboro, were indicted for violations of narcotic laws, 26 U.S.C. §§ 4705(a) and 7237(b). Williams, Kowlessar and McNeil were charged only with conspiracy, while English and Roseboro were additionally charged with substantive violations of the statute. Prior to trial English became a fugitive, and Roseboro entered a plea of guilty to all counts. Upon trial the jury found Williams guilty and acquitted Kowlessar and McNeil, and on January 27, 1972, Williams was sentenced to eight years imprisonment. On May 15, 1972, this Court affirmed Williams' conviction from the bench (2 Cir., 458 F.2d 1406), and on October 19, 1972, the Supreme Court denied Williams' petition for a writ of certiorari (409 U.S. 875, 93 S.Ct. 140, 34 L.Ed.2d 102).

The essence of this appeal is predicated upon Roseboro's testimony at a subsequent trial. Although Roseboro did not testify in the Williams trial, he later testified in United States v. Manfredi, et al., 72–Cr–810, in the District Court for the Southern District of New York, during which trial the following colloquy with Roseboro took place concerning the conspiracy for which Williams was previously convicted:

"Q. Isn't it a fact that you told the government there that these young ladies and the other people were involved in that crime?

A. No, I didn't.

Q. You didn't?

A. No.

Q. Did you tell them they were not involved?

A. On a few occasions I told them they wasn't involved.

Q. They were not involved?

A. Right.

Q. *You told them nobody else was involved except yourself?*

A. Yes.

Q. *Is that the truth?*

A. *To my knowledge, yes."*

(Italics supplied.)

In addition, Roseboro testified that he had purchased the narcotics for a December 15, 1970 transaction referred to in the Williams trial, from one Joey LaCosa and not Williams.

Based upon this testimony, Williams in April, 1973, petitioned the District Court to vacate the judgment of conviction or, in the alternative, for a hearing pursuant to 28 U.S.C. § 2255, upon the ground that the testimony exculpated him from the charge for which he was convicted, and that the Government had knowledge of this information before the Williams trial and failed to disclose the same, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). On June 28, 1973, Judge

* Of the Eastern District of New York, sitting by designation.

Palmieri, without a hearing, denied the petition in spite of the consent of the Government to such a hearing. On February 26, 1974, Judge Palmieri again denied Williams' petition without a hearing on the ground that the averments in support of the petition were insufficient. From this order Williams appeals. The issue thus presented is whether Judge Palmieri erred in holding that "the files and records" of the case conclusively demonstrate that Williams was entitled to no relief. We hold that he did not.

## I

Since the issue is a narrow one, we state the facts briefly. At the trial the Government's proof established a network of narcotics transactions in which the following participated: Calvin Williams as a supplier, Roseboro as a wholesaler-retailer, and English as Roseboro's courier. An informant described as "Bobby" was the "purchaser," and Special Agent Allen Johnson of the New Orleans office of the Bureau of Narcotics and Dangerous Drugs, acting in an undercover capacity, was "Bobby's" representative or "man."

On October 19, 1970, Johnson was introduced to English by "Bobby" and subsequently introduced to Roseboro at the latter's home. That same night "Bobby," in Roseboro's presence, delivered 210 grams of heroin and 108 grams of cocaine hydrochloride to Johnson in exchange for $10,000 in cash previously given to "Bobby." On October 28, 1970, another sale took place at which Johnson gave Roseboro $10,000 in cash, and the next day, in compliance with Roseboro's promise, English delivered to Johnson a plastic bag containing heroin.

Predicated upon the above purchases, a court authorized federal wiretap was installed on Roseboro's telephone at his Bronx home in November, 1970. On December 5, 1970, Roseboro placed a telephone call to a "Calvin" at a public telephone located at the Glamour Inn, 2130 Seventh Avenue, Manhattan. During this conversation with "Calvin" Roseboro ordered several "pounds" of "wine" and "whiskey" and "Calvin" agreed to deliver a "pound of wine" the following evening. Further phone calls ensued on December 6, 1970, between Roseboro and "Calvin" at the Glamour Inn concerning a deficiency in the delivery to Roseboro of certain "pounds" and again on December 7, 1970. In the latter conversation "Calvin" informed Roseboro that Roseboro's "man" had been "trailed."

On December 10, 1970, Roseboro received a call from "Bobby" informing him that "Al" (Agent Johnson) would be coming to New York the next day to purchase $10,000 worth of narcotics. Immediately following this conversation Roseboro called "Calvin" again at the Glamour Inn and placed an order with him for "one quarter" of a kilogram of narcotics claimed by Roseboro to be due him from a previous transaction. On December 11, 1970, Johnson checked in at the Sheraton Motor Inn in Manhattan, where he was informed by Roseboro over the telephone that English would later pick up the money. Roseboro then called "Calvin" who, however, told him that he did not have "it" yet and probably would not get "it" until later that evening. At ten o'clock on the same evening Roseboro and English went to the Glamour Inn, from which Roseboro and "Calvin" exited a few minutes later. One hour later English went to Johnson's hotel room where he was given $10,000 in cash by Johnson, and subsequently left to meet Roseboro a few blocks away.

No deliveries were made until December 15, 1970, when English delivered to Johnson at the Sheraton Motor Inn 429.-9 grams of heroin and 11.53 grams of cocaine. In its summation the Government did not contend that the narcotics delivered on December 15, 1970, were obtained from Williams.

## II

Roseboro's statement that Joey LaCosa was the supplier for the December 15th transaction with Agent Johnson is not only not exculpatory but is

patently immaterial since the Government made no attempt to prove nor did it argue that Williams was the ultimate supplier for that transaction—a fact which was mentioned by Williams' counsel in summation. It is plain that such proof was not necessary for Williams' conviction of conspiracy since it was established at trial that Williams was engaged in an on-going narcotics distribution venture with Roseboro and English and was in fact solicited by Roseboro to furnish narcotics for the December 15th delivery.

Contrary to the Government's assertion that the statement that "nobody else was involved" referred only to the December 15th transaction, the *Manfredi* record indicates that Roseboro was referring to the entire conspiracy for which Williams and he were convicted. Nevertheless, accepting Roseboro's statement at face value, it is plain that the evidence offered at the Williams trial overwhelmingly contradicted it.

### III

■ At the *Manfredi* trial Roseboro stated that "on a few occasions" he had told the Government that "nobody else was involved." Appellant contends that this equivocal statement indicates that the Government was aware at the time of Williams' trial that Roseboro would give testimony which would exculpate Williams and that its failure to reveal this to Appellant violated the *Brady* rule. Assuming that the Government was aware that Roseboro would so testify if called, it was not required to make this known since Appellant was also on notice of the essential facts which would have enabled him to call Roseboro and thus take advantage of any exculpatory testimony that he might furnish. United States v. Ruggiero, 472 F.2d 599, 604

(2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973); United States v. Purin, 486 F.2d 1363, 1368, n.2. (2d Cir. 1973), cert. denied, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (June 3, 1974). We should also add that there is nothing in the statement indicating the time when those "few occasions" occurred, nor is there any allegation in the petition that the Government was aware at the time of the trial that LaCosa and not Williams was the supplier for the December 15th transaction.[1] We find, therefore, that Appellant's argument based on *Brady* is without merit.

■ After reviewing the record, we agree with Judge Palmieri's conclusions that Williams' conviction was supported by "overwhelming proof at trial completely unrelated to any testimony of the co-defendant [Roseboro]." In spite of the Government's consent to a hearing, it is clear that the District Court has discretion before granting an evidentiary hearing to ascertain whether the claim is substantial. Where allegations in the petition are immaterial, conclusory and palpably false, there is no basis for a hearing. Sanders v. United States, 373 U.S. 1, 19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970). An examination of Roseboro's statements at the *Manfredi* trial clearly demonstrates that they fall within the above category and are insufficient to mandate a hearing. We hold that the District Court was correct in finding that the "files and the records of the case conclusively show" that the defendant is entitled to no relief. 28 U.S.C. § 2255.

Affirmed.

---

1. In opposition to Appellant's motion the Government submitted affidavits by an Assistant U.S. Attorney and by Roseboro himself which were not part of the "files and records of the case," Taylor v. United States, 487 F.2d 307 (2d Cir. 1973), and were not relied upon by Judge Palmieri.