**UNITED STATES of America, Appellee,**

**v.**

**Michael ESPOSITO, Appellant.**

**No. 229, Docket 87–1220.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1987.

Decided Nov. 25, 1987.

Bruce J. Kelton, Beverly Hills, Cal., for appellant.

Helen Gredd, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Aaron R. Marcu, Asst. U.S. Atty., of counsel), for appellee.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

Michael Esposito appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, Judge, denying a motion to vacate a judgment of conviction for criminal contempt for refusal to obey a court order to testify before a federal grand jury. Esposito argued to the district court and argues here that the Government improperly failed to disclose evidence in its possession relative to his fear of testifying, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the allegedly suppressed information would have supported a defense of duress. We affirm.

## I. BACKGROUND

On April 25, 1985, Esposito was ordered to testify before a federal grand jury in the District of New Jersey under a grant of statutory use immunity pursuant to 18 U.S.C. § 6001 (1982). He defied the court order and was jailed as a civil contemnor for over three months under 28 U.S.C. § 1826(a) (1982). Meanwhile, on July 2, 1985, on the application of the United States Attorney for the Southern District of New York, Judge Mary Johnson Lowe issued a writ of habeas corpus *ad testificandum* directing that Esposito be produced to testify before the Southern District grand jury. After several adjournments at Esposito's request, on July 31, 1985, Judge Peter K. Leisure ordered Esposito to testify before the Southern District grand jury under a grant of statutory use immunity. On August 1, 1985, Esposito defied this order and once again was jailed for civil contempt. Three times between August 20, 1985 and December 4, 1985, Esposito sought orders

releasing him from confinement on the ground that continued confinement would not persuade him to testify as ordered. He cited testimony given by FBI Special Agent Dennis Marchalonis at the pretrial detention hearings of Martin Taccetta and Michael Accetturo, two of the men indicted by the New Jersey federal grand jury. The agent testified that associates of Taccetta and Accetturo had beaten Esposito in 1984 and that Esposito had told Marchalonis in April 1985 that the reason he had refused to testify in the District of New Jersey was fear of reprisal. On January 30, 1986, Judge Leisure granted Esposito's third motion for release finding that there was "no realistic possibility that continued confinement might cause Esposito to testify."

Immediately thereafter, on January 31, 1986, Esposito was indicted in the Southern District of New York for criminal contempt. On March 24, 1986, he moved for an order dismissing the indictment on the ground that successive contempt proceedings violated his right to due process of law and constituted prosecutorial misconduct. He also filed a motion to compel pretrial discovery of any material in the Government's possession relating to his claimed fear of testifying before the grand jury. In support of the motion to dismiss, Esposito once again relied upon Agent Marchalonis's testimony at the New Jersey hearings: "Agent Dennis Marchalonis testified, *inter alia*, that at least two of the defendants were demonstrably dangerous and violent individuals citing as an example the physical beating they administered to Michael Esposito in 1984." Judge Edelstein denied both motions, observing that it was well settled that fear is not a defense to a charge of criminal contempt. *United States v. Esposito*, 633 F.Supp. 544, 547 (S.D.N.Y.1986). The court nevertheless found that Esposito's fear would be relevant at sentencing and hence ordered that, in the event of Esposito's conviction, the Government must produce all materials bearing on his fear prior to sentencing. *Id.* On May 13, 1986, Esposito served, but evidently did not file, a motion seeking to have the opinion denying his motions made

part of the trial record, asserting that he had a viable duress defense to the contempt charge. On May 22 a pretrial conference was held on the unfiled motion at which the district court reviewed the essential elements of a duress defense. Counsel made a proffer that Esposito would testify (1) that he had had business dealings with Michael Taccetta and Robert Caravaggio, both subjects of the New Jersey grand jury investigation, that in connection with those business dealings they had beaten him in June 1984, and that as a consequence, Esposito was afraid to testify against them; and (2) that when Esposito appeared in the District of New Jersey in April 1985, FBI Agent Marchalonis told him that Taccetta and Caravaggio were dangerous and violent individuals who posed a threat to his physical safety.

Judge Edelstein held that even if the proffer were credited, it failed as a matter of law to establish a defense of duress. Accordingly, a trial on stipulated facts began and ended on May 23, 1986. Esposito was found guilty of criminal contempt. Sentencing was scheduled for June 27, 1986, but later postponed, at Esposito's request, to July 11.

On July 10 the Government provided Esposito with the information it possessed regarding his claimed fear of testifying. This included:

(1) an affidavit of Assistant United States Attorney Mark R. Hellerer stating that Esposito and counsel had met with him and several FBI agents on July 3, 1985, that Esposito had freely discussed the subjects concerning which he had been subpoenaed to testify and in no way suggested that fear would prevent him from testifying, and that Esposito's father, Salvatore Esposito, had told Hellerer that fear was not the reason Esposito had refused to testify;

(2) the transcript of the August 1, 1985, civil contempt proceeding before Judge Leisure;

(3) the transcript of the testimony of Salvatore Esposito before the Southern District grand jury on October 22, 1985—testimony to the effect that his son had told

him that he had refused to testify in the grand jury solely to avoid incriminating himself and that he had sought and obtained the assistance of Anthony Salerno to force Taccetta to relent;

(4) the affidavit of another Assistant United States Attorney summarizing hearing transcripts, memoranda, and other evidence presented at the New Jersey pretrial detention hearings of Taccetta and Accetturo; attached to the affidavit were (a) memoranda of law summarizing information concerning a business relationship between Esposito and two criminal associates of Taccetta and Accetturo which had given rise to Esposito's 1984 beating, and representing that a confidential source had informed FBI Agent Marchalonis that the defendants under indictment in the New Jersey case were planning to kill Esposito because he already had "told the FBI everything"; (b) a certification executed by Esposito in June 1985 in connection with the New Jersey civil contempt proceedings in which he claimed that his refusal to testify was based on his fear of reprisals; and (c) five excerpts from Agent Marchalonis's testimony indicating that Esposito had told him that his refusal to testify in the grand jury was based on his fear of reprisals, that he had been beaten by two associates of Taccetta and Accetturo, and that because Taccetta believed that Esposito had cooperated with the Government, Esposito would be "handled" when he was released from prison.

After receiving these materials from the Government, Esposito requested his sentencing date be adjourned until September 2, 1986. The Government consented. Four days before that date, Esposito moved to vacate his conviction and dismiss the indictment with prejudice, charging that the Government's pretrial suppression of the District of New Jersey materials provided to him on July 10, 1986, constituted "gross misconduct." Judge Edelstein denied the motion, holding that the Government had not suppressed anything because Esposito clearly knew, or should have known, of all the information in question. *United States v. Esposito*, 654 F.Supp. 664, 666–67 (S.D.

N.Y.1987). He also held in the alternative that the information at issue was not material within the meaning of *Brady v. Maryland* and hence that its suppression would not warrant relief. *Id.* at 667–69. This appeal ensued.

## II. DISCUSSION

In *Brady*, the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196–97. As a threshold matter, the defendant must show that the Government actually suppressed evidence. Since the prosecutor's duty to disclose necessarily extends only to "information which had been known to the prosecution but unknown to the defense," *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), evidence is not suppressed and *Brady* is not applicable where the defendant either knew or should have known the essential facts permitting him to take advantage of the evidence in question. *See United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *United States v. Prior*, 546 F.2d 1254, 1259 (5th Cir.1977). That is this case.

Prior to trial Esposito had actual possession of or ready access to almost all the information provided at sentencing.[1] Needless to say, he knew of the meetings he had had with the Assistant United States Attorney supervising the New York grand jury investigation, *see United States v. Cortez*, 757 F.2d 1204, 1208 (11th Cir.), *cert. denied*, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985) (no *Brady* violation where defendant knew he had testified before a congressional committee). Moreover, virtually all of the material that Esposito claims was suppressed came from the

pretrial detention hearings concerning Taccetta and Accetturo. That evidence consisted of two memoranda of law, excerpts from the transcripts of four hearings conducted in the District of New Jersey, and Esposito's own signed statement. These materials were matters of public record, all filed in the District of New Jersey between August 23, 1985, and October 10, 1985. This case does not require this court to decide whether *Brady* ever requires the Government to turn over transcripts of public hearings or trials. *Compare United States v. Harris*, 542 F.2d 1283, 1294 (7th Cir.1976) (transcripts of prior trial testimony should be made available when practical, whereas disclosure of evidence adduced in prior judicial proceeding exculpating present defendants is mandatory), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977), *with McPhail v. Warden, Attica Correctional Facility*, 539 F.Supp. 165, 170 (S.D.N.Y.1982), *aff'd*, 707 F.2d 67 (2d Cir.1983) (prosecution need not provide transcripts of codefendant's trial when available to public).

The record here indicates that Esposito had actual possession of the transcripts prior to trial. His counsel repeatedly referred to and recited from the New Jersey proceedings in seeking Esposito's release from jail following his civil contempt conviction nearly four months before the indictment in this case was returned. During his appearance before Judge Leisure on October 10, 1985, Esposito's counsel actually cited to a page and a line of a transcript of FBI Agent Marchalonis's testimony of August 23, 1985. He went on to describe the substance of Marchalonis's October 3 testimony, testimony given just seven days earlier. In fact, Esposito's counsel stated to Judge Leisure that "I will have the minutes for your Honor, where he said that as early as April of '85 Mr. Esposito told me, me being Special Agent Dennis Marchalonis that he would never testify because of fear on this issue of being beaten and other reasons, fear for his life and that of his family." After indictment but be-

---

1. The only exception was the transcript of Salvatore Esposito's grand jury testimony which disputed rather than supported Esposito's du

ress claim. Since this was not exculpatory evidence, *Brady* is inapplicable. 373 U.S. at 87, 83 S.Ct. at 1196.

fore trial in this case, Esposito's counsel again referred to the agent's New Jersey testimony when moving to compel pretrial discovery and when making the offer of proof on the duress defense. He submitted a certification to the district court dated March 20, 1986, summarizing Agent Marchalonis's testimony regarding Esposito's 1984 beating.

 Even if the Government suppressed documents, Esposito would be entitled to a new trial only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Here, the allegedly suppressed materials do not support a duress defense which requires "actual or threatened force of such nature as to induce a well-founded fear of impending death or serious bodily harm" coupled with no reasonable opportunity to escape the compulsion without committing a crime. *United States v. Mitchell*, 725 F.2d 832, 837 (2d Cir.1983) (quoting *United States v. Agard*, 605 F.2d 665, 667 (2d Cir.1979)), and, therefore, their disclosure would not have altered the result. "[E]ven if the matters asserted by defense counsel were assumed to be true, there was a failure to demonstrate that the defendant ... was confronted with more than general fear." *United States v. Esposito*, 654 F.Supp. at 668. Even accepting the proposition that Esposito felt a specific and well-founded fear of immediate bodily injury as opposed to a generalized fear, *see United States v. Bifield*, 702 F.2d 342, 346 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983), the motion to vacate the conviction still fails because it does not "indicate how the allegedly suppressed information demonstrates that Esposito tried to escape the compulsion or sought the protection of the government." *United States v. Esposito*, 654 F.Supp. at 668.[2]

Thus, we hold that there was no suppression within the meaning of *Brady* because at all times Esposito knew or had access to the facts which he claimed the Government suppressed. But even if this were not true, the suppressed evidence would not have supported a viable duress defense so as to warrant *Brady* relief.

Judgment affirmed.

---

2. To secure witness cooperation where the witness has been threatened, the Government created the federal witness protection program, *see* 18 U.S.C. § 3521 (1985), which often provides for the change in identity and relocation of witnesses. Esposito was offered and declined protection under this program.